PORTO RICO FERTILIZER COMPANY, Petitioner, *v.* RAFAEL SANCHO BONET, TREASURER OF PUERTO RICO, ET AL., Defendants.

No. 317.   Argued January 24, 1939.—Decided April 26, 1939.

*Brown, González & Newson,* for petitioner. *Attorney General B. Fernández García* and *E. de Aldrey, Assistant Attorney General,* for respondent.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

The Porto Rico Fertilized Company, a corporation organized under the laws of this Island, appeared before this Supreme Court on November 23, 1938, and prayed for a writ

of mandamus addressed against the defendants as members of the Board of Equalization and Review, ordering them to consider and decide a certain appeal filed before said board by the petitioners on August 26, 1938, which appeal the board had dismissed.

The defendants were ordered to appear to show cause, if any existed, why the writ should not issue. On January 9, 1939, the parties appeared for that purpose and argued their case, filing subsequently a brief in support of their respective contentions.

Let us examine the facts. It is alleged in the petition that on October 2, 1933, the petitioner, in accordance with section 64 of the Income Tax Law of 1925, as subsequently amended, requested the Treasurer of Puerto Rico to return $6,683.45, $8,059.83 and $5,489.93 voluntarily paid by petitioner as retaining agent of the Virginia-Carolina Chemical Corporation, of Richmond, Virginia, as income tax on interest paid by petitioner to the Virginia-Carolina Chemical Corporation, during the years 1929, 1930 and 1931; that as grounds for its request for the return of the taxes it alleged that the income on which the tax had been levied did not have a taxable situs in Puerto Rico, and that the tax paid was not then owing, all in accordance with the doctrine of the case of *Gallardo* v. *United Porto Rican Sugar Co.*, 42 P.R.R. 624, affirmed by the Circuit Court of Appeals, First Circuit, in the case of *United Porto Rican Sugar Co.* v. *Gallardo,* 62 Fed. (2d) 552; that on October 30, 1933, the treasurer refused the return and the petitioner, on the grounds afforded by section 355 of the Regulations promulgated by the Treasurer himself for the execution of the Income Tax Law, filed a complaint against the Treasurer before the District Court of San Juan on November 3, 1933, requesting the return of the taxes so paid; that on March 1, 1934, the district court rendered judgment against plaintiff, and the petitioner appealed to this Supreme Court where the judgment of November 13, 1933, was affirmed (49

P.R.R. ____) again affirming the case when it decided two motions for reconsideration on August 31, 1936, and February 26, 1937 (50 P.R.R. ____, and 51 P.R.R. ____) without holding in any of the opinions the necessity to appeal to the Board of Equalization and Review; that on April 13, 1937, the petitioner appealed to the Circuit Court of Appeals, First Circuit, and that court in affirming the judgment appealed from, (98 Fed. (2d) 398); defined for the first time in its opinion the proper procedure for a taxpayer to recover income taxes voluntarily paid, for the purpose of annulling the provisions of section 355 of the Regulations of the Treasurer, and also distinguished for the first time the proper procedure to recover taxes in cases of voluntary payment, and the procedure fixed by this court when the tax is paid under protest.

After laying those foundations, the petitioner further alleges in its petition that neither the statute nor the Regulations fix a given term to appeal to the Board of Equalization and Review from a decision of the Treasurer refusing to return income taxes voluntarily paid, to which paragraph (b) of section 75 of the statute refers; and that on August 26, 1938, petitioner appealed to the Board from the order of the Treasurer of October 30, 1933, but the Board refused to consider the merits of the appeal because it thought that same had been filed after the expiration of the term granted therefor.

The petitioner then argues that the acts of the Board are illegal and requests the aid of this court praying for the mandamus already referred to.

On March 27 last, the Supreme Court of the United States, in deciding the case of *Sancho Bonet, Treasurer,* v. *Yabucoa Sugar Co.,* held through Mr. Associate Justice Black:

"Respondent sued the Treasurer of Porto Rico in a local district court for recovery of 1927 income taxes paid under the laws of the Island. By construction of the local Porto Rican statutes permitting

suits for refunds, the local district court found that no right had been granted to sue at law for taxes voluntarily paid. The bill of complaint was then dismissed for lack of jurisdiction, because it disclosed that the tax in question had been paid voluntarily and without protest. The Supreme Court of Porto Rico affirmed, but was reversed by the United States Circuit Court of Appeals.

"As conceded by respondent, this suit cannot be maintained unless authorized by a Porto Rican law, because Porto Rico cannot be sued without its consent. It is also conceded that the Porto Rican legislature is not obligated to provide a judicial remedy for tax refunds. Respondent's contentions here are that the governing statutes of the Island do authorize the present suit 'either by express language or by necessary implication,' and that the Porto Rican courts erroneously construed the local statutes.

"Section 75 of the controlling Income Tax Act of Porto Rico, approved August 6, 1925, authorizes the Treasurer 'to remit, refund, and pay back all taxes erroneously or illegally assessed or collected,... and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected,' and requires him to 'report to The Legislature of Porto Rico at the beginning of each regular session . . . all transactions under this section.'

"The courts of Porto Rico construed Section 75 to mean that the Treasurer's refusal to refund taxes not paid under protest is final; that the local statutes grant the courts no jurisdiction to review this refusal; and that after the Treasurer's report to the legislature, a voluntary taxpayer's complaint must be addressed to the legislature. Disagreeing with this construction given the statute by the courts of Porto Rico, the Circuit Court of Appeals (one Judge dissenting) found that the 1925 Act plainly provided a resort to the courts, even in suits to recover taxes voluntarily paid without protest.

"It is necessary that we examine some of the considerations which led to the Porto Rican courts' construction of Section 75 of the 1925 Act. For illustration, Section 66 of the Porto Rican Income Tax Law of 1919 imposed upon the Treasurer the duty of making tax refunds (as in Section 75 of the 1925 Act), but Section 66 contained an express provision for 'appeal to the courts' if a taxpayer's claim were denied by the Treasurer. The omission of this express provision from Section 75 and all other Sections of the 1925 Act was logically considered by the Porto Rican courts to be of significance in the construction of that Act. The right of appeal to the courts contained in Section 66 of the 1919 Law was first omitted from the

1921 Porto Rican Law, and this led the Supreme Court of Porto Rico to declare in the present case that 'since 1921, . . . the right to bring suits for the recovery of taxes other than those paid under protest has been abrogated.'

"Furthermore, four different sections of the 1925 Act (57, 60, 62 and 76(*a*)) constitute a statutory plan under which a taxpayer who pays under protest is granted the right to sue in the courts for refund. Such a taxpayer can sue at law under these sections only if he has been denied refund by both the Treasurer and the Board of Review and Equalization of the Island. But these sections nowhere expressly authorize appeal from the Treasurer to the Board by one who paid taxes without protest. And Section 76(*b*), which the Circuit Court of Appeals interpreted as authorizing suit by a taxpayer who paid without protest, expressly prohibits suit in court 'until a claim for refund or credit has been duy filed with the Board of Review and Equalization *on appeal*, according to the provisions of law in that regard, and the regulations established in pursuance thereof.' (Italics supp.) Since a voluntary taxpayer is given no express right of appeal from the Treasurer to the Board by the 'provisions of law in . . . regard' to such appeals, he is not expressly authorized to comply with the condition precedent to right of suit under Section 76(*b*). Rights denied by the statutes could not be granted by regulations.

"In addition, Section 76(*b*) of the 1925 Act is practically identical in language with Section 3226 of United States Revised Statutes governing suits for refunds of United States taxes. But the legislature of Porto Rico—while apparently using Section 3226 as a model—omitted from 76(*b*) the clause of Section 3226 reading 'suit or proceeding (for tax refund) may be maintained, whether or not such tax . . . has been paid under protest or duress." This substantial adoption of Section 3226, omitting the clause authorizing suit without protest, (as well as the similar omission from the 1921 Act), could hardly represent accidental oversight, but instead indicate a deliberate legislative purpose.

"Congress first granted local authority to the Government of Porto Rico in 1900 and comprehensively revised the original plan in 1917. Both enactments manifest a congressional purpose to preserve—consistently with our system of government—the then existing governmental practices. Laws and ordinances then in effect and not contrary to our laws or Constitution were continued in full force, subject to alteration by the Porto Rican legislature or Con-

gress. Original and appellate local courts, their jurisdiction and procedure, were preserved by Congress, and local officials were left in office. And this Court has declared its unwillingness to overrule Porto Rican tribunals upon matters of purely local concern or to decide against the local understanding of a local matter, not believed by this Court to be clearly wrong, and a disposition to accept the construction placed by a local court upon a local statute and to sustain such a construction in the absence of clear or manifest error.

"Taxing acts of Porto Rico are purely local and the traditional reluctance of this Court to overturn constructions of such local statutes by local courts is particularly applicable to interpretations of Porto Rican statutes by Porto Rican tribunals. Orderly development of the government of Porto Rico as an integral part of our governmental system is well served by a careful and consistent adherence to the legislative and judicial policy of deferring to the local procedure and tribunals of the Island.

"The judgments of the Porto Rican courts in this case are not unsupported by logic or reason. They embody a recognition of our constitutional division of powers between the legislative and judicial branches of government. Believing the legislature had declined to give the right to sue to a taxpayer who computed his own tax from his own records and voluntarily paid it without protest, the Porto Rican courts properly declined to read implications into a statute which they could not fairly find there. In passing upon a previous construction of a Porto Rican statute by the Supreme Court of Porto Rico, this Court said, 'The construction adopted in Porto Rico at least does not violence to the words of the statute; it concerns local affairs under a system with which the court of the Island is called on constantly to deal, and we are not prepared, as against the weight properly attributed to the local decision, to say that it is wrong.' So here, we cannot say the Porto Rican courts were wrong. In failing to uphold their construction of the local statutes, the Circuit Court of Appeals was in error.

"The judgment of the Court of Appeals is reversed and the complaint in the district court of Porto Rico must stand dismissed, as ordered by that court and affirmed by the Supreme Court of Porto Rico.

"It is so ordered."

We have transcribed *in extenso* the opinion of the court because we think that it definitely decides the question here

in, issue,. and, further, because being as it is the last and best authorized construction of precepts of law in constant application, it should be known *in extenso.*

Delving deeper into the fundamental question there in issue, which was the condition precedent of payment under protest in order to invoke the aid of the courts of law, incidentally but quite clearly the national Supreme Court decided that under a voluntary payment not only is one precluded from appealing to the courts, but also to the Board of Equalization and Review. We repeat what it said directly in point. It reads thus:

"Furthermore, four different sections of the 1925 Act (57, 60, 62 and 76(*a*)) constitute a statutory plan under which a taxpayer who pays under protest is granted the right to sue in the courts for refund. Such a taxpayer can sue at law under these sections only if he has been denied refund by both the Treasurer and the Board of Review and Equalization of the Island. But these sections nowhere expressly authorize appeal from the Treasurer to the Board by one who paid taxes without protest. And Section 76(*b*), which the Circuit Court of Appeals interpreted as authorizing suit by a taxpayer who paid without protest, expressly prohibits suit in court 'until a claim for refund or credit has been duly filed with the Board of Review and Equalization *on appeal,* according to the provisions of law in that regard, and the regulations established in pursuance thereof.' (Italics supp.) Since a voluntary taxpayer is given no express right of appeal from the Treasurer to the Board by the 'provisions of law in . . . regard' to such appeals, he is not expressly authorized to comply with the condition precedent to right of suit under Section 76(*b*)."

Hence, it is not that the statute fails to fix a given term within which to appeal to the Board from an order of the Treasurer when he refuses to return the income tax voluntarily paid, it is that such an appeal is not granted by the statute. And this being so, the contention of the petitioner falls from its own base, in consequence whereof, the mandamus prayed for must be denied.